

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

October 12, 2017

<u>BY ECF AND HAND</u>

The Honorable Henry B. Pitman
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>       Re:      ***United States v. Lidya Maria Radin*, S1 16 Cr. 528 (HBP)**

Dear Judge Pitman:

The defendant in the above-captioned case is scheduled to be sentenced on October 16, 2017.  The Government respectfully submits this letter in connection with that sentencing.  As set forth in greater detail below, in light of the sentencing factors most applicable here, the Government recommends imposing a sentence that includes a period of incarceration as to one of the misdemeanor counts, to be followed by a meaningful term of probation as to the other misdemeanor counts.  As discussed below, such a sentence would address the need for both specific and general deterrence in connection with this defendant's brazen and repeated disregard for Court rules.

## I.      Background

As the Court knows, Lidya Radin ("Radin" or the "defendant") was convicted of three Class C misdemeanor violations of the Code of Federal Regulations on August 8, 2017, following a bench trial before Your Honor.  The United States Probation Department ("Probation") filed an amended Presentence Investigation Report ("PSR") on September 25, 2017.[1]  However, the defendant did not submit to an interview in connection with that report.

As the PSR correctly identifies, the defendant's sentencing range (the "Sentencing Range") is zero to ninety days' incarceration.  (PSR at 9.)  The United States Sentencing

---

[1] The amended report reflects the defendant's April 2010 misdemeanor conviction for harassment and stalking, which was not referenced in the original report, filed September 21, 2017.  That conviction resulted in a ninety-day term of incarceration.

October 16, 2017
Page 2 of 7

Guidelines ("Guidelines") do not apply because the defendant has been convicted of misdemeanors. Radin's sentencing range is therefore determined based on the statutory maximum sentence she faces. That is, thirty days' imprisonment on each count. Although Title 18, United States Code, Section 3583 does not contemplate supervised release for Class C misdemeanors,[2] Section 3561 provides that the defendant may be sentenced to as much as five years' probation in lieu of incarceration on any given count. (PSR ¶ 27.)

## II.    Offense Conduct

As the evidence at trial established, in 2015, the defendant attempted to enter the Grand Jury area of the courthouse at 40 Foley Square with a recording device. After that incident, courthouse security personnel in this district determined that the defendant should be escorted by a Court Security Officer ("CSO") while she is at the courthouses at 500 Pearl Street and 40 Foley Square. (PSR ¶ 7.)

On January 28, 2016, the defendant and her associate, Dean Loren, attended a court proceeding before Judge Pauley at the courthouse at 500 Pearl Street, during which time she was escorted by CSO Frank Pena. Although the defendant was not a party to the case pending before Judge Pauley (nor was Loren), she and Loren attempted to be heard several times during the conference by, among other things, raising their hands. (PSR ¶ 8.)

After the conference ended, the defendant and Loren entered the hallway outside of Judge Pauley's courtroom. When one of the attorneys who had appeared at the conference entered the hallway, the defendant approached the attorney and began speaking with him in an aggressive manner. CSO Pena intervened and told the attorney that he did not need to speak with the defendant if he did not want to. The attorney indicated that he did not want to speak with her and turned away, continuing to wait for an elevator to arrive. When the elevator came, the attorney moved quickly towards it and stepped inside. CSO Pena then blocked the defendant's entrance to the elevator and instructed her to wait for the next one to arrive. The defendant ignored CSO Pena's directive and attempted to push past him to enter the elevator. She was subsequently issued a ticket by a Federal Protective Service ("FPS") Officer. (PSR ¶ 9.)

On July 7, 2016, the defendant again attended a court proceeding at the courthouse at 500 Pearl Street – this time in connection with the violation notice she had received in January. Chief Judge Freeman presided over the conference and the defendant raised her voice, interrupted the judge, and generally acted in a disrespectful manner. During the course of the conference, Judge Freeman directed the defendant not to file her papers with the clerk's office. (PSR ¶ 10.)

After the court appearance concluded, court security personnel asked the defendant to exit the courtroom. They escorted her to the courthouse lobby, where the clerk's office is

---

[2] Section 3583 does not anticipate supervised release for "petty offenses," a category which encompasses Class C misdemeanors. *See* 18 U.S.C. § 19.

October 16, 2017
Page 3 of 7

located. The defendant then attempted to enter the clerk's office to file papers she had brought with her, in direct contravention of Judge Freeman's order from minutes before. Agents from the U.S. Marshals Service and FPS told the defendant not to enter the clerk's office and to leave the building. The defendant refused, raised her voice, and created a disturbance in the lobby. FPS therefore issued her two violation notices and removed her from the building. (PSR ¶ 10.)

Although not at issue during the trial in this case, on August 10, 2016, two days after this Court returned a guilty verdict against the defendant, she attended a court proceeding for one of her associates at the federal courthouse in Trenton, New Jersey. While there, the defendant was issued a ticket for disorderly conduct. According to the ticket, the defendant "became disruptive and belligerent when [courthouse security] advised her of the building rules and regulations while on federal property. He then asked her to leave the facility. She refused at which time he tried to escort her out by grasping her elbow; she didn't comply with his instructions, and was detained and escorted in handcuffs to the USMS holding area." (PSR ¶ 11; *see also* Ex. A.)

### III.   The Defendant's Conviction and Applicable Sentencing Range

On September 23, 2016, the Government filed a superseding misdemeanor information, charging the defendant with two counts of violating 41 C.F.R. § 102-74.385 and one count of violating 41 C.F.R. § 102-74.390(a). The defendant proceeded to trial before Your Honor on June 16, 2017. On August 8, 2017, the trial concluded with a guilty verdict on each count. As stated above, the applicable Sentencing Range is zero to ninety days' incarceration.

The defendant refused to submit to an interview with the Probation Department to assist in the preparation of the PSR. Based on the information available to it, the Probation Department has recommended a sentence of a $500 fine.

### IV.   The Requested Sentence

The Government respectfully requests that the Court impose a sentence to include a term of incarceration on at least one of the counts of conviction and a meaningful term of probation on the two other counts of conviction (the "Requested Sentence"). The Government further requests that the Court include as conditions of the defendant's probation that she receive a mental health evaluation and treatment, and that she not enter the courthouses in the Southern District of New York, Eastern District of New York, or District of New Jersey without prior written permission from the Probation Department.

Restricting a defendant's access to particular locations is a permissible condition of probation. *See* 18 U.S.C. § 3563(b)(6) (conditions may include that the defendant "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons"). Courts have upheld such restrictions against First Amendment challenges so long as the restrictions are "reasonably necessary to accomplish the essential needs of the state and public order." *United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995) (citing *Birzon v. King*, 469

October 16, 2017
Page 4 of 7

F.2d 1241, 1243 (2d Cir.1972)).  The Tenth Circuit in *Turner*, for example, upheld a probation condition limiting the defendant's access to abortion clinics, reasoning that "Given her deeply held convictions regarding abortion, it is not fantastic to speculate that if she were permitted to protest at abortion clinics, she might not be able to restrict her activities within lawful parameters. In order to help insure Ms. Turner does not repeat her criminal conduct, the district court did not abuse its discretion by imposing this condition as a term of her probation."  *Id.*; *cf. United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010) ("A district court retains wide latitude in imposing conditions of supervised release . . . ." (internal quotation marks omitted)).

        To ensure that the defendant is not denied the right to petition, the Government proposes that the defendant be permitted to enter the courthouses for appropriate reasons with prior written permission from Probation.  Such access would be appropriate if, for example, the defendant wished to attend a court proceeding for a case to which she is a party, or for other appropriate circumstances deemed appropriate by Probation.

        The proposed restriction on courthouse access is consistent with a special condition of supervised release that the Honorable Brian M. Cogan imposed in *United States v. Regina Lewis*, 12 Cr. 655.[3]  Specifically, Judge Cogan ordered that the "[d]efendant shall refrain from entering the federal courthouse at 500 Pearl Street, New York, NY, any other federal courthouse, and any of the five boroughs of New York City, unless it pertains to a court appearance (on a case in which she is a party) for which the defendant must provide the Probation Office with advance notice . . . ."  *See id.* Dkt. No. 125.

## V.    Discussion

        The Government submits that a sentence incorporating both a period of incarceration and a meaningful period of probation is necessary to effect the purposes of sentencing, including just punishment, specific deterrence, general deterrence, and promoting respect for the law.

        *First*, as the Court is well aware, the defendant in this case is not easily deterred.  Her repeated violations of the rules governing behavior at this and other courthouses indisputably proves this fact.  While appearing before Judge Freeman in connection with her January 28, 2016 ticket, the defendant engaged in the very same conduct with which she had already been charged, leading to the issuance of two more tickets.  Within two days of being convicted in this Court, she created a disturbance at the courthouse in Trenton.  She has been undeterred and, to date, unpunished despite this stunningly disruptive course of conduct.  The Government believes that the Requested Sentence, incorporating both a period of incarceration and probation, is essential to deter future unlawful conduct.

        Specifically, a short period of incarceration will send a clear signal to the defendant that there are and will continue to be real consequences for her actions.  She is not entitled to flout the

---

[3] This case originated in the Southern District of New York, but was transferred to the Eastern District after then-Chief Judge Preska concluded that all Southern District judges were conflicted from the case.

October 16, 2017
Page 5 of 7

rules and ignore directions of courthouse staff whose responsibility it is to maintain a safe and orderly environment. To date, the defendant's repeated instances of disorderly conduct have not produced any effective consequence. A sentence of incarceration will provide punishment for her past conduct, and help to convey that any future violations will be met with serious consequences.

Taking into account the persistence of the defendant's behaviors and considering the possible causes of those behaviors, additional measures likely will be necessary to effect adequate deterrence. This is evidenced by the fact that the defendant previously served a ninety-day term of incarceration in connection with her 2010 conviction for harassment and stalking, which punishment apparently did not deter her from further unlawful behavior. The Requested Sentence therefore includes a period of probation, with mental health evaluation and treatment and a provision restricting the defendant's access to the courthouses where she has engaged in the offense conduct.

As in *Turner*, it "not fantastic to speculate" that if Radin continues to have unfettered access to the very places she has committed the crimes of conviction, she "might not be able to restrict her activities within lawful parameters." *Turner*, 44 F.3d at 903. Including as a condition of probation a restriction on the defendant's access to courthouses in this area, which she has a history of visiting and at which she has a history of engaging in disruptive behavior—including following her conviction in this case—would be lawful and reasonable given the record of contumacious behavior here.

Moreover, the defendant's communications, both in court and out of court, support the need for a mental health evaluation and treatment. As the Court is aware, the trial in this matter was unable to commence on time due to the defendant's outbursts and intransigence. (*See, e.g.*, Trial Tr. at 2-40.) The Court summarized the defendant's behavior at one point, noting that she was "speaking over" the Court, "called [Your Honor] a jackass," and "rais[ed] issues, which have no place here . . . issues, which have been rejected by Judge McMahon, Judge Batts, and were rejected by [the Court] in [the defendant's] prior motion to dismiss the information." (*Id.* at 40:14-23.) Despite these admonishments, the defendant's opening statement concluded with the accusation that "[y]ou are breaking the law. You are colluding and conspiring with breaking the law." (*Id.* at 50:9-10.) This behavior continued throughout the trial. For example, on the final day of trial, the defendant continued to press issues with no relevance to the case against her, including her issues with the "petty docket," arguing that "[n]obody can see the petty docket. . . . So you must be able to see the petty docket. It's right here. I got a copy of it. It says it right here. Petty offense docket sheet and judgment order. Why am I blind to it? Why are you blind to it? You're not blind to it." (*Id.* 520:23-521:6.)[4]

---

[4] This is not to suggest that the defendant was unable to understand the nature of the proceedings or effectively participate in her defense. Once witnesses took the stand, she was fully able to participate in asking questions relevant to the charges against her.

October 16, 2017
Page 6 of 7

The defendant's out of court communications are similarly troubling.  She has sent extensive and unsolicited email communications to judges in the Southern District of New York, the U.S. Attorney's Office, and others.  For example, a March 9, 2017 email from the defendant to, among others, Judge Carter's chambers, accused Federal Defender Julia Gatto of spying on Radin and "demand[ed] all of Federal Defender's Julia Gatto's information in any form. . . ." (*See* Ex. B.)  An April 20, 2017 email to a large distribution list, again including Judge Carter's chambers, prosecutors in this office, and others, attacks the jurisdiction over a criminal case in a different district.  (*See* Ex. C.)

The nature and extent of these outbursts and email communications support the inclusion of a term of probation, with mental health evaluation and treatment, as part of the sentence to be imposed.

*Second*, the Requested Sentence is necessary to effect general deterrence.  As the Court itself saw and heard about during the trial in this case, the defendant has a number of associates who have likewise engaged in obstreperous conduct.  These associates have also followed the path set by the defendant in sending aggressive emails to large distribution lists.  For example, on May 1, 2017, Dean Loren sent an email titled "DOJ Inspector General Complaint against FBI NYC Field Dir McCabe – Violent Attacks using Security Monitors and Brady Materials for Bund, Mumford, Grant, Radin, Burg and Loren" to approximately fifty recipients, including numerous federal government email addresses, the Center for Judicial Accountability, members of the Federal Defenders, and, once again, Judge Carter's chambers.  (*See* Ex. D.)  A sentence including a period of incarceration and probation will deter those individuals from following the same path this defendant has trodden.

*Third*, the Requested Sentence will promote respect for the law.  The defendant plainly has no such respect and appears to have encouraged others to follow her defiant example.  While the defendant makes much of her self-described status as a "creature of law," her behavior in the courthouse illustrates that she views herself as the sole determiner of what is lawful.  The defendant has, to this point, been deaf to any law enforcement guidance or judicial ruling with which she disagrees.  The Requested Sentence – and particularly, a term of incarceration – will send a powerful signal that the defendant is not the ultimate arbiter of the law, and her failure to respect the decisions of those who are entrusted and empowered to enforce the law will be met with meaningful consequences.  A period of incarceration before the commencement of a term of probation would help encourage compliance with the probation conditions, as it would render the consequences of violating the terms of her probation all the more real.

October 16, 2017
Page 7 of 7

## VI.   Conclusion

In sum, the Requested Sentence would be sufficient but not greater than necessary to punish the defendant's repeated misconduct, effectively deter her and others from violating courthouse rules, and promote respect for the law.  The Government therefore respectfully requests that the Court impose the Requested Sentence.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:   _____
Stephanie Lake / Michael Ferrara
Assistant United States Attorneys
(212) 637-1066 / 2526

cc:   Lidya Radin (by mail)
Florian Miedel, Esq. (by email)