UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

LIDYA MARIA RADIN,

Defendant.

No. 16-cr-528 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

On October 18, 2017, following a four-day bench trial before Magistrate Judge Henry B. Pitman, Defendant Lidya Maria Radin was convicted on two counts of failure to comply with signs and directions on federal property, in violation of 41 C.F.R. § 102-74.385, and one count of disorderly conduct on federal property, in violation of 41 C.F.R. § 102-74.390(a). (Doc. No. 87.) Magistrate Judge Pitman sentenced Radin to 10 days' incarceration, but permitted her to remain on bail pending appeal. (Doc. No. 89.) The case is now before this Court on Radin's timely appeal of her conviction pursuant to 18 U.S.C. § 3402 and Federal Rule of Criminal Procedure 58(g)(2)(B). (Doc. No. 90.) For the reasons set forth below, Radin has failed to raise any issues constituting reversible error, and her conviction is therefore AFFIRMED.

I. BACKGROUND

A. Facts[1]

In 2015, Radin reportedly attempted to enter the grand jury area of the Thurgood Marshall United States Courthouse at 40 Foley Square (the "TM Courthouse") with a recording device. (Trial Tr. at 52:11–56:11, 164:5–165:13; Doc. No. 108-3 ("GX 2").) After that incident, court

---

[1] The following facts are taken from the evidence presented at trial and construed in the light most favorable to conviction. *See United States v. Kim*, 435 F.3d 182, 184 (2d Cir. 2006).

security personnel determined that whenever Radin attempted to enter either of the federal courthouses in Manhattan – the TM Courthouse or the Daniel Patrick Moynihan United States Courthouse at 500 Pearl Street (the "DPM Courthouse") – she must be escorted by a Court Security Officer ("CSO"). (*See* Trial Tr. at 53:3–58:17; 164:5–165:23.)

On January 28, 2016, Radin and a companion attended a proceeding before Judge Pauley at the DPM Courthouse, during which time Radin was escorted by CSO Frank Pena. (Trial Tr. at 59:10–60:5.) Although neither Radin nor her companion was a party to the case pending before Judge Pauley, they attempted to be heard during the proceeding by raising their hands, standing, and declaring that they wished to speak to Judge Pauley. (*See id.* at 60:6–25; *see also* Doc. No. 108-2 ("GX 3").)

After the proceeding ended, Radin and her companion stayed in the hallway adjacent to the courtroom. (Trial Tr. 63:3-14.) When one of the attorneys who had appeared at the proceeding entered the hallway to wait for an elevator, Radin approached him and began calling him names and otherwise speaking to him in a confrontational manner. (*Id.* at 63:15–64:3.) CSO Pena intervened and told the attorney that he could go down in the elevator by himself if he wished. (*Id.*) The attorney thanked him. (*Id.*) Meanwhile, Pena told Radin to stop behaving disruptively and positioned himself between her and the attorney. (*Id.* at 64:4–64:6.) When the elevator came, the attorney moved quickly towards it and stepped inside. (*Id.* at 64:6–64:8.) Pena then blocked Radin from entering the elevator and instructed her to let the attorney take the elevator alone. (*Id.* at 64:6–64:12, 85:13–18.) Nevertheless, Radin attempted to push past Pena to enter the elevator, making physical contact with him while he was engaged in his duties. (*Id.* at 64:6–64:12.) After a brief struggle, Radin was handcuffed and detained until a Federal Protective Service officer arrived and issued her a violation ticket. (*Id.* at 64:13-21; 92:4-7; 124:6–125:15; 140:13-23.)

On July 7, 2016, Radin appeared before Chief Magistrate Judge Debra Freeman at the DPM Courthouse to be presented on the January 28, 2016 violation ticket. Throughout the proceeding, Radin repeatedly interrupted Judge Freeman and attempted to talk over her. (*See id.* at 159:19-25; Doc. No. 108-3 ("GX 4").) Towards the end of the proceeding, Judge Freeman noted that she had received "many, many papers" that Radin had "tried to file every which way" – for example, by dropping them off in the Clerk's Office, sending them to Judge Freeman's chambers, and sending them to Chief Judge Colleen McMahon's chambers. (Doc. No. 108-3 at 27–30.) Judge Freeman directed Radin not to file papers directly with the Clerk's Office, but to take them to the *pro se* intake window on the second floor of the DPM Courthouse. (Trial Tr. at 161:5-17; Doc. No. 108-3 at 29-30.) When the proceeding concluded, court security personnel instructed Radin to exit the courtroom. (Trial Tr. at 162:3–12.) They escorted her to the courthouse lobby, which happens to be where the Clerk's Office is located. (*See id.* at 162:16–162:22.) Notwithstanding Judge Freeman's clear directive, Radin then attempted to enter the Clerk's Office to file papers she had with her. (*Id.* at 162:23–163:16.) When officers from the U.S. Marshals Service and Federal Protective Service instructed her not to enter the Clerk's Office and to leave the building, she argued with them, raised her voice, and attempted to push past one of the officers. (*Id.* at 162:23–163:16; 185:1-11.) The officers then handcuffed her, issued her a violation ticket, and released her, at which point she left the building. (*Id.* at 163:17-25.)

B. Procedural History

On August 3, 2016, the government filed an information against Radin charging her with one Class B misdemeanor violation of 18 U.S.C. § 113(a)(5) (simple assault) arising from the incident at the DPM Courthouse in January 2016; one Class C misdemeanor violation of 41 C.F.R. § 102-74.390(a) (disorderly conduct) arising from the incident in the lobby of the DPM Courthouse

in July 2016; and one Class C misdemeanor violation of 41 C.F.R. § 102-74.385 (failure to obey signs and directions), also arising from the July 2016 incident.

About three weeks later, Radin appeared before Magistrate Judge Andrew J. Peck to be presented and arraigned on the charges. (Doc. No. 18.) Judge Peck informed Radin of her rights, including her right to be represented by an attorney. (*Id.* at 5:2-12:23.) At the conclusion of the proceeding, the case was assigned to Judge Pitman for trial. (*Id.* at 15:14-16.)

On September 26, 2016, the government filed a superseding information against Radin. (Doc. No. 12.) The superseding information reduced the charge in Count One from a Class B misdemeanor to a Class C misdemeanor for failing to comply with signs and directions at the DPM Courthouse on January 28, 2016, in violation of 41 C.F.R. § 102-74.385; Counts Two and Three remained unchanged. (*Id.*)

On June 16, 2017, Radin's trial on the charges in the superseding information began before Judge Pitman. Trial continued on June 19, June 22, and August 8, 2017. Radin was assisted by standby counsel from the Federal Defenders of New York for the first three days of trial, and by Florian Miedel, Esq., a member of the Court's Criminal Justice Act Panel, for the final day of trial. The trial concluded on August 8, 2017, on which date Judge Pitman rendered a verdict of guilty on all counts. (Trial Tr. 585:1-3.) On October 16, 2017, Judge Pitman sentenced Radin to 10 days' imprisonment on each count, to run concurrently. (Doc. No. 87.) At sentencing, Radin indicated that she wished to exercise her right to appeal, and requested that Judge Pitman instruct the Clerk of Court file a notice of appeal on her behalf. (Doc. No. 91 (Sentencing Tr.) at 22:20–24:21.) Judge Pitman ordered the Clerk of Court to file the notice of appeal. (*Id.*) Two days later, on October 18, 2017, Radin filed a letter in which she purported to object to the filing of the notice of appeal, but demanded, among other things, that her case be heard by a federal district court

judge. (*See* Doc. No. 88.) In response, Judge Pitman indicated that he was unaware of any mechanism for review by a district court judge other than an appeal, and noted that "[b]ecause this matter was tried before a magistrate judge, any appeal will necessarily be before a [d]istrict [j]udge" pursuant to 18 U.S.C. § 3402. (Doc. No. 89.) Accordingly, Judge Pitman stated that "notwithstanding [Radin's] October 18, 2017 submission, and in order to protect [her] appellate rights," he would adhere to his direction to the Clerk of the Court to file promptly a notice of appeal on her behalf. (*Id.*) The notice of appeal was filed on October 20, 2017. (Doc. No. 90.)

The appeal was assigned to my docket, and on November 10, 2017, the Court issued an order setting a briefing schedule. (Doc. No. 104.) That order required Radin to file her opening brief by December 18, 2017, the government to file its brief in opposition by January 18, 2018, and Radin to file her reply by February 1, 2018. (*Id.*) On December 18, 2017, the day Radin's opening brief was due, she made a request to extend the deadline to December 22, 2017, which the Court granted. (Doc. No. 105.) Radin thereafter filed her opening brief (Doc. No. 106), and the government filed its brief in opposition on January 18, 2018. (Doc. No. 108.) On January 24, 2018, after Radin made several telephone calls to chambers in which she attempted to elaborate on arguments raised in her opening brief, the Court instructed Radin that she may not communicate with the Court via ex parte phone calls to chambers, and reminded her that her reply brief was due February 1, 2018. (Doc. No. 109.) On the day before Radin's reply was due, she filed a seven-page letter, along with seven pages of exhibits, requesting that her deadline be extended to February 8, 2018 and making various arguments and assertions under the heading "demand for a mandatory, open, public hearing in connection with taking judicial notice [pursuant to] Federal Rules of Evidence, Rule 201." (Doc. No. 111.) The Court granted the extension, but noted that the other arguments in the letter were not properly before the Court because, as the Court stated at

5

the outset of this appeal, the Court would consider only arguments that Radin made in her appellate briefs.[2] (Doc. No. 112.) On February 8, 2018, the day of the new deadline, Radin filed a nine-page letter seeking another extension – this time in the form of a 90-day stay "in connection with crimes that an illegal alien" allegedly inflicted on her. (Doc. No. 113.) A few days later, she filed a 15-page letter again requesting a "mandatory hearing in connection with [her] demands for judicial notice." (Doc. No. 114.) As detailed in the Court's February 15, 2018 order, and in light of Radin's repeated failure to comply with court deadlines and her decision to file multiple lengthy letters in the time she could have been preparing her reply brief, the Court rejected Radin's last-minute request for a stay and deemed her appeal fully submitted. (Doc. No. 115.)

## II. LEGAL STANDARD

This court has jurisdiction over Radin's appeal pursuant to 18 U.S.C. § 3402 and Rule 58 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 58(g)(2)(B). In an appeal from a magistrate judge's judgment of conviction, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D); *see also United States v. Marquez*, 979 F. Supp. 2d 326, 331 (E.D.N.Y. 2013). Accordingly, for the purposes of this appeal, the Court reviews questions of law *de novo* and accepts the magistrate judge's factual determinations unless they are clearly erroneous. *Marquez*, 979 F. Supp. 2d at 331 (citing *United States v. Gandia*, 424 F.3d 255, 261 (2d Cir. 2005)).

---

[2] In any event, Radin's demand for a "public hearing" in connection with the taking of judicial notice has no basis in the Federal Rules of Evidence. Rule 201 merely provides that when a court takes judicial notice of a fact, "a party is entitled to be heard on the propriety of taking judicial notice." Fed. R. Evid. 201(e); *see Costello v. Flatman*, LLC, 558 F. App'x 59, 60 (2d Cir. 2014). But the Court has not attempted to take judicial notice here, so that provision is inapposite. Moreover, nothing in Rule 201 provides for an in-person "public hearing" of the kind Radin apparently has in mind. (*See* Doc. No. 111 ("Please let [m]e know when this mandatory hearing will be scheduled to take place.").)

Because Radin is proceeding *pro se*, the Court construes her appellate submission liberally and interprets it to raise the strongest arguments that it suggests. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). "This policy of liberally construing *pro se* submissions" arises out of the understanding that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (citation and internal quotation marks omitted).

III. DISCUSSION

As an initial matter, much of Radin's appellate submission – even construed liberally – sets forth arguments and assertions that are plainly beyond the scope of this appeal. For example, she threatens to file "non-judicial liens" against various court employees, attaches an article about retired federal judge Richard Posner, and refers to a report on Oregon cattle rancher Cliven Bundy's confrontation with law enforcement several years ago. (Doc. No. 107 at 1–3, 12–35.) The Court will consider only the portions of Radin's submission that challenge her conviction or sentence in this case.

First, Radin asserts that the government violated her rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide her with documents regarding the jurisdictional status of the DPM Courthouse. Under *Brady*, the government has a constitutional duty to disclose evidence favorable to the accused where that evidence is "material" to guilt or punishment. *Id.* at 87. Evidence is considered material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation and internal quotation marks omitted).

Here, Radin contends that the government should have provided her with documentary evidence, such as a lease or deed, showing that the government has only "proprietary jurisdiction" over the Courthouse. But Radin fails to explain how such evidence could have affected her conviction under 41 C.F.R. § 102-74.385 (failure to obey signs and directions) or 41 C.F.R. § 102-74.390(a) (disorderly conduct). The elements of the first offense are: (a) that the incident occurred on federal property; (b) that the defendant failed to comply with either (i) an official sign of a prohibitory, regulatory, or directory nature; or (ii) the lawful direction of federal police officers and other authorized individuals; and (c) that the defendant acted unlawfully, wilfully, and knowingly. *See* 41 C.F.R. § 102-74.385; *United States v. Brasch*, No. 95-cr-865 (PKL), 1996 WL 720090, at *3 (S.D.N.Y. Dec. 12, 1996) (summarizing elements of similarly worded predecessor regulation), *aff'd*, 205 F.3d 1325 (2d Cir. 1999). The elements of the second offense are (a) that the incident occurred on federal property; (b) that the defendant loitered, exhibited disorderly conduct, or exhibited other conduct that (i) created loud or unusual noise or disturbance, (ii) unreasonably obstructed the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots, (iii) otherwise impeded or disrupted the performance of official duties by government employees, or (iv) prevented the general public from timely obtaining the administrative services provided on the property; and (c) that the defendant acted willfully and knowingly. *See* 41 C.F.R. § 102-74.390; *United States v. Brice*, 926 F.2d 925, 928 (9th Cir. 1991) (summarizing elements of similarly worded predecessor regulation).

The only element of either offense for which Radin's *Brady* claim could conceivably be relevant is the first element, which requires only that the incident have occurred on federal property. *See* 41 C.F.R. § 102-74.385; 41 C.F.R. § 102-74.390(a). To the extent that Radin is arguing that the DPM Courthouse is not federal property because the land on which it sits is

8

effectively leased from the City of New York, rather than owned by the federal government in fee simple, that argument finds no support in common sense, ordinary understandings of property – which admit of varying degrees of ownership and control – or, most importantly, the regulations under which Radin was convicted, which provide that "[t]he rules in this subpart apply to *all* property *under the authority of* [the General Services Administration] and to all persons entering in or on such property." 41 C.F.R. § 102-74.365 (emphasis added); *see also* 40 U.S.C. § 1315(c) ("The Secretary [of Homeland Security], in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned *or occupied* by the Federal Government and persons on the property.") (emphasis added). The evidence at trial established that the Courthouse is property under the authority of the General Services Administration, and that the Courthouse is occupied by the federal government. (Trial Tr. 51:15-18; 123:2-9; 135:2-9; 194:12–195:18.) Hence, it is federal property for the purposes of the regulations applicable here. *See, e.g.*, *United States v. Swartz*, No. 15-cr-00351-MEJ-1, 2015 WL 4638289, at *3 (N.D. Cal. Aug. 4, 2015) (finding that the Ninth Circuit courthouse in San Francisco is federal property for purposes of 41 C.F.R. § 102-74.385 based on GSA's apparent authority over the courthouse). Thus, Radin's *Brady* claim is meritless.

Second, Radin appears to challenge the credibility of CSO Pena, who testified for the prosecution, and Federal Protective Service Officer Vincent Samuel, who was called as a defense witness. Assessments of the credibility of witnesses "are peculiarly within the province of the trier of fact and are entitled to considerable deference." *Joseph v. New York City Bd. of Educ.*, 171 F.3d 87, 93 (2d Cir. 1999). An appeals court may reverse on credibility grounds only if it is "left with a definite and firm conviction that a mistake has been committed." *United States v. Rios*, 856 F.2d 493, 495 (2d Cir. 1988). Here, Radin merely asserts in conclusory fashion that Pena and Samuel

9

"have no credibility" because they "broke the law in not taking [her] without unnecessary delay to a judge after they arrested [her] without a warrant." (Doc. No. 107 at 3-4.) That court security personnel did not take Radin to see a judge after temporarily detaining her, and instead gave her a ticket, which is authorized by federal law, *see* Fed. R. Crim. P. 58(b)(1), however, has little to do with the credibility of the witnesses' testimony about her conduct on January 28 and July 7, 2016. More to the point, Radin identifies no "[d]ocuments or objective evidence [that] may contradict the witness' story; [nor does she claim] the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Rios*, 856 F.2d at 495 (citation omitted). Accordingly, Radin's attack on the witnesses' credibility fails.

Third, Radin asserts that because Magistrate Judge Pitman did not make specific findings of fact or conclusions of law, his ruling is "so vague" that she cannot effectively challenge it on appeal. (Doc. No. 107 at 4.) However, it is well-established that where the trial record "reveals no request for detailed findings, a general verdict of guilty will suffice." *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003) (citing *United States v. Devenere*, 332 F.2d 160, 162 (2d Cir. 1964)). By failing to request at trial a detailed recitation of the basis for the verdict, Radin forfeited any such right she may have had. *See id.*; Fed. R. Crim. P. 23(c) ("In a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion.").

Fourth, Radin claims that the government "suborned perjury" by Officer Samuel. (Doc. No. 107 at 4.) Although her argument on this point is not entirely clear, she appears to be alluding to Officer Samuel's testimony that the federal government has "concurrent" criminal jurisdiction over the DPM Courthouse rather than, as Radin asserts (without citation to record evidence or

authority), "proprietary" jurisdiction. As an initial matter, it was Radin – not the government – who called Officer Samuel as a witness and elicited testimony from him regarding the jurisdictional status of the Courthouse. In response to Radin's questions on direct examination, Samuel testified that the Courthouse was under "concurrent" jurisdiction, by which he appears to have meant that the federal government shares responsibility for law enforcement with state or local officers. (Trial Tr. 543:7-22.) Radin fails to show that this answer was false, let alone that it was perjurious, suborned by the government, or material to her conviction.

Fifth, Radin contends that between April 2016 and August 2016 she filed documents with the Clerk's Office that are "missing" from the record. (Doc. No. 107 at 4.) She does not explain, however, what these supposedly missing documents are or how they bear on her conviction or sentence. Nor does she explain why, if the documents were in fact missing, she could not have re-filed them at any time in the 14 months preceding this appeal. Accordingly, this argument is unavailing.

Finally, Radin asserts that Magistrate Judge Pitman "impermissibly ruled on a Petition for Abatement for Misnomer" because such a a petition is "made as of right," and claims that Judge Pitman "threw out page two" of the petition, thereby committing a "fraud on the Court" that deprives the Court of jurisdiction. This argument – really an amalgam of conclusory, unsupported assertions – is difficult to follow. The record indicates that Radin filed a document titled "Petition for Abatement for Misnomer" with the Clerk's Office on February 23, 2017 (Doc. No. 44), in which she appears to argue principally that the charging instrument against her is defective because it capitalizes her entire name, rather than only the first letter of her first, middle, and last names. This formatting issue obviously has no bearing on the validity of Radin's conviction or sentence. Nor do any pages appear to be missing from the petition. Thus, this argument too is meritless.

IV. CONCLUSION

For the reasons stated above, the judgment of conviction is AFFIRMED. Any appeal of this order will be to the U.S. Court of Appeals for the Second Circuit, and must be filed within 30 days. *See* Fed. R. Crim. Proc. 58(g)(1); Fed. R. App. Proc. 4(a)(1)(A).

Because neither Radin nor the government has appealed Judge Pitman's order staying her sentence pending appeal, the stay shall remain in effect pending any appeal to the Second Circuit. *See* Fed. R. App. Proc. 9(b); 3B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 770 (4th ed. 2017) ("Release pending appeal, unless revoked, runs until the final termination of the proceedings in all courts.")

The Clerk of Court is respectfully directed to mail a copy of this order to Radin.

SO ORDERED.

Dated: March 16, 2018
New York, New York

RICHARD J. SULLIVAN
United States District Judge